# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

COLE GP CCPT II, LLC, et al.                                    PLAINTIFFS

V.                                          CAUSE NO.: 3:07CV75-SA-SAA

KENLAN DEVELOPMENT, LLC, et al.                                 DEFENDANTS

## MEMORANDUM OPINION

This cause is before the court on the Motion for Summary Judgment [81] filed by Defendants

Kenlan Development, LLC, and Kenlan Development-Oxford, LLC ("Kenlan"). Also before the

Court is Plaintiff Cole GP CCPT II, LLC, Cole Operating Partnership II, LP, Cole Credit Property

Trust II, Inc., and Cole OT Oxford MS, LP's ("Cole") Motion for Partial Summary Judgment [79]

and Motion to Amend the Pleadings to Conform to the Evidence [97]. The parties have additionally

filed three motions to strike various affidavits and included evidence from the record [88], [90],

[103]. From its review of all matters made a part of the record of this case as well as applicable law,

and being thus fully advised in the premises, the Court finds that the Defendants' Motion for

Summary Judgment should be DENIED, the Plaintiff's Motion for Partial Summary Judgment

should be GRANTED in part and DENIED in part[1] and the Motion to Amend the Pleadings [97] is

hereby GRANTED. The motions to strike are addressed below. The court specifically finds as

follows:

### *Factual Background*

The Cole Companies are a conglomerate of entities formed as a real estate investment trust

("REIT"). Under the Internal Revenue Code, REITs are required to pay distributions to investors

---

[1]Additionally, Kenlan's unopposed Motion to Supplement the Record [92] is GRANTED, and the Court notes here that the evidence attached to that motion was reviewed in making this determination.

a certain percentage of their taxable income and are limited in the types of investments that can be made by the REIT. The Cole Companies investment goals are as follows: provide current income to investors through cash distributions; preserve capital investments; and achieve capital gains from real estate investments.

Kenlan Development-Oxford, LLC, constructed a 35,000 square foot movie theater at the Oxford Commons development. At the time of construction, the pertinent partners of that enterprise were Lance Forsdick, Jr., and Kenneth Farrell.[2] In early 2005, Cole and Kenlan engaged in a discussion of Cole's possible acquisition of the fully-constructed movie theater at the Oxford Commons development. At the time of their negotiations, Kenlan had already established a tenant for the movie theater which would be operated by American Screen Works, Inc. ("ASW") and its special purpose entity, Oxford Theater, Inc. Specifically, Kenlan had entered into a twenty-year lease agreement with Oxford Theater whereby Oxford Theater would pay monthly rent in the approximate amount of $70,000 for a period of five years, with escalations in rent at the end of the five year period. The lease further contained provisions for payment of percentage rent upon reaching a certain level of gross revenues and allocated responsibility for payment of insurance, taxes, and maintenance to the tenant. The lease was signed and entered into on July 31, 2004, and ASW guaranteed all obligations under the lease.

Cole contends that prior to purchasing the movie theater, Kenlan gave its assurances that ASW was a reputable company with the financial strength to operate a theater in a profitable fashion. Cole also requested and received from Kenlan financial statements and other information concerning

---

[2]Kenny Farrell sold his interest in Kenlan Development to Lance Forsdick approximately June 29, 2005.

the assets of ASW. These financial statements reflected that ASW did have sufficient financial strength to support the rent levels agreed to in the lease. Cole also asserts that Kenlan gave its assurances that James Duffy, the principal of ASW and Oxford Theater, was experienced in the movie theater business.

On August 2, 2005, a Purchase Agreement was executed for the sale/purchase of the movie theater property at the Oxford Commons. The Agreement conveyed from Kenlan to a Cole entity purchaser, Series A, LLC, the property for $9,692,503. Series A, LLC, then assigned its rights, title, and interest in the Purchase Agreement to Series B, LLC, another Cole entity, who then assigned all right, title, and interest in that Agreement to Cole Oxford. Along with the rights inherent in the Purchase Agreement, Cole Oxford also acquired all rights contained in the Guaranty of Lease executed by ASW on July 31, 2004.

After acquiring the property, Cole received one rental payment from Oxford Theater. No further payments have been received since that time, and Cole evicted Oxford Theater from the property instead of terminating the lease. Moreover, Cole obtained a default judgment against Oxford Theater and ASW in the amount of $475,583.93, which has since been amended and stands at $775,683.20 for the unpaid rent amounts.

Cole filed this suit on June 20, 2007, alleging that Kenlan failed to disclose material information concerning the financial health and viability of Oxford Theater and ASW, the opinion of Malco Theaters that the Oxford market would not support two movie theaters, and Malco's alleged threat regarding the new theater's inability to obtain first-run movies. Accordingly, Cole's complaint alleged the following causes of action against Kenlan: fraudulent inducement and concealment; mutual mistake; unilateral mistake; negligent misrepresentation; breach of the

covenant of good faith and fair dealing; and unjust enrichment. Kenlan counterclaimed seeking

attorneys' fees under the Purchase Agreement. Cole seeks to rescind the Purchase Agreement and/or

recover damages from Kenlan in an amount to be determined at trial.

Kenlan filed a Motion for Summary Judgment and attached over twelve hundred pages of

exhibits to that motion. Cole filed a Motion for Partial Summary Judgment alleging that attorneys'

fees were not available as the conflict between Cole and Kenlan did not arise under the contract.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure

when evidence reveals no genuine dispute regarding any material fact, and the moving party is

entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a sufficient showing

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91

L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the

district court of the basis for its' motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-

moving party must then go beyond the pleadings and designate "specific facts showing that there is

a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d

313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.

TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d

1093, 1097 (5th Cir. 1997); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

Kenlan asserts that Cole's theories of liability against them are based upon allegations of fraudulent omissions, rather than actions, which cannot be substantiated by proof and therefore, must fail as a matter of law. Cole counters that genuine issues of material fact exist as to all causes of action against Kenlan; thus, the motion for summary judgment must be denied.

**Fraudulent Concealment**

In order to prove fraud or misrepresentation, the plaintiff must prove the following elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. <u>Great S. Nat'l Bank v. McCullough Env't Servs.</u>, 595 So. 2d 1282, 1289 (Miss. 1992).

Kenlan asserts that under Mississippi law, there is no duty to disclose or act affirmatively in arms length business transactions. However, where one party to the contract knows that the other is entering into the transaction under a mistake as to a particular fact, the Mississippi Supreme Court has held there is a duty to disclose the truth. <u>See</u> <u>Guastella v. Wardell</u>, 198 So. 2d 227, 230 (Miss. 1967) (noting that a party to a business transaction is under a duty to disclose to the other party, before the transaction is consummated, information which would correct previous representations made to the other party which are untrue or misleading).

Cole asserts that Kenlan made material representations to Cole regarding the financial well-being of ASW, the potential competitive effects of Malco's presence in the market, and the ability

of Oxford Theater to obtain first-run films. Specifically, Cole alleges that Kenlan was aware of the financial discrepancies but withheld that material information from Cole in an effort to consummate the $9.6 million deal. Moreover, Cole claims Kenlan affirmatively withheld ASW's landlord references from Cole.

James Duffy testified that he had warned Kenlan about the competition with Malco and ASW's prospective inability to get first-run movies. He also claims he informed Kenlan about his deteriorating financial situation prior to the closing with Cole. However, Duffy also testified that ASW held $5-7 million in the bank in August of 2006 and just chose not to pay rent to Cole. Lance Forsdick has adamantly denied any knowledge about the financial troubles of ASW before the closing with Cole.

There is a dispute regarding the landlord references which were only provided to Cole through discovery in this case. Kenlan asserts that as Cole did not plead these facts in their complaint, they should be precluded from arguing them now. Moreover, Kenlan asserts that to allow Cole to present this evidence now as a basis for their claims would be prejudicial to them.

Federal Rule of Civil Procedure 15(b) holds that the court should "freely permit" the pleadings to be amended when doing so would aid the presentation of the merits and the opposing party fails to satisfy the court that the evidence would prejudice the party's action or defense on the merits. Cole discovered this information during the discovery phase of this action, and although they may have had the opportunity to include such information in their second Amended Complaint and did not, the Court concludes that Plaintiff shall be able to conform their pleadings to the evidence. Kenlan was aware throughout the discovery period and beyond that Cole recently discovered that those documents were not produced prior to litigation; therefore, no prejudice exists in that Kenlan

had the opportunity to engage in discovery and rebut the same. Moreover, Plaintiff only seeks to include these documents as evidence of the aforementioned claims of fraudulent concealment and inducement, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. Thus, this evidence is not outside the scope of the claims made by Cole in their Second Amended Complaint. Accordingly, Cole's allegations regarding the landlord references shall be included in this case and Plaintiff's Motion to Amend the Pleadings [97] is granted.

Under Section 8 of the Purchase Agreement, the Buyer agreed to provide to the Seller "all information in Seller's possession or control relating to the leasing, operating, maintenance, repair, zoning . . ." Accordingly, Kenlan did have a duty to provide information to Cole, and that duty could arguably extend to the information Cole seeks to hold Kenlan liable for allegedly withholding, specifically, the landlord references.

Thus, there are genuine issues of material fact as to Cole's claim of fraudulent concealment, and this claim is improper for summary judgment.

**Mutual Mistake**

Cole claims that it entered into the transaction with Kenlan based on a set of shared assumptions regarding the financial well-being and business acumen of the tenant supplied by Kenlan. Cole further asserts that it thought it was acquiring a theater that had the ability to obtain first-run movies. Cole contends that Fordick's testimony that he thought ASW could obtain first-run movies proves that the contract was executed under a mutual mistake.

"[A] mutual mistake must be a mistake on the part of both parties or a mistake on the part of one party (a unilateral mistake) with fraud or inequitable conduct on the part of the other party." Perrien v. Mapp, 374 So. 2d 794, 796 (Miss. 1979). Kenlan argues that factors outside of its control

7

contributed to the theater's failure. Therefore, Kenlan argues there was no mutual mistake.

Cole asserts, and Kenlan admits, that Kenlan knew Cole's purpose in acquiring the property was to produce income. Cole contends that Kenlan either had ASW's financial information and withheld it from Cole or established the contract based on their assumption of ASW's solvency. Cole has raised a genuine issue of material fact as to whether the parties to the transaction were contracting under mistaken assumptions. Thus, whether the parties were involved in a mutual mistake is an issue for the jury.

**Unilateral Mistake**

Alternatively, Cole alleges that if Kenlan was not mistaken as to the financial strength of ASW or the competitive pressures to be exerted on the Oxford theater market, then Cole entered the transaction with a fundamental imbalance of information that affected its' ability to enter into the contract. Kenlan asserts that Cole "controlled its own destiny" and caused the theater to shut down. Further, Kenlan argues that Cole had the resources to expend in order to engage in due diligence themselves and investigate ASW.

Equity prevents an intolerable injustice where a party has gained an unconscionable advantage by mistake and the mistaken party is not grossly negligent. Ruff v. Estate of Ruff, 989 So. 2d 366, 370 (Miss. 2008) (citing Rotenberry v. Hooker, 864 So. 2d 266, 271 (Miss. 2003)). The general rule provides that:

> [W]here the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in statu quo; equity will interfere, in its discretion, in order to prevent intolerable injustice.

Rotenberry, 864 So. 2d at 271 (quoting Miss. State Bldg. Comm'n v. Becknell, 329 So. 2d 57, 60-61

(Miss. 1976)).

> Becknell additionally recognized:
>
> Implicit in the very definition of "mistake" is some degree of negligence. Human failure is its essence and it denotes an error of judgment. Nevertheless, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to grant relief from honest but negligent mistake.

Becknell, 329 So. 2d at 61.

Cole has at least raised a genuine issue of material fact that the transaction at issue here was

premised on a unilateral mistake. Based on the facts in the record, the Court finds that a jury should

make the determination as to whether it would be "inequitable and fundamentally unjust" not to

grant relief.

**Negligent Misrepresentation**

In order to establish a prima facie case of negligent misrepresentation, a plaintiff is required

to show:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

Skrmetta v. Bayview Yacht Club, Inc., 806 So. 2d 1120, 1124 (Miss. 2002) (quoting Spragins v.

Sunburst Bank, 605 So. 2d 777, 780 (Miss. 1992)). As noted above in the discussion regarding

Cole's fraudulent misrepresentation claim, Cole has presented a genuine issue of material fact as to

whether there was a material misrepresentation that was reasonably relied upon and caused damages

to plaintiff. Accordingly, there are disputed issues for the trier of fact.

**Breach of Covenant of Good Faith and Fair Dealing and Unjust Enrichment**

Kenlan asserts that these additional theories put forth by Cole do not apply under the facts of the case. The duty of good faith and fair dealing has been recognized in Mississippi as inherent in all contracts. Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992). This duty is "based on fundamental notions of fairness . . ." and "not only proscribe[s] undesireable conduct, . . . may require affirmative action as well." Id. (citations omitted). Accordingly, "[a] party may thus be under a duty not only to refrain from hindering or preventing the occurrence of conditions of his own duty or the performance of the other party's duty, but also to take some affirmative steps to cooperate in achieving these goals." Id.

Cole asserts that at a minimum, Kenlan did not furnish Cole the list of landlord references. Thus, Cole contends that they have presented a factual issue as to whether failing to produce those references constituted a breach of the good faith and fair dealing duty. Moreover, there is a question as to what Kenlan knew prior to closing and whether that information should have been disclosed to Cole.

Kenlan also contends that it cannot be unjustly enriched when it sold property at a value within the appraisal performed by the purchaser and its lender. Cole counters that the value conferred on the property was based on its putative status as an income-producing property with a legitimate tenant, and an ability to show first-run films. Therefore, these factors undergirded the appraisal and Cole's decision to pay $9.6 million for the theater.

An unjust enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to "equity and good conscience." 1704 Twenty First Ave., Ltd. v. City of Gulfport, 988 So. 2d 412, 416 (Miss. Ct. App. 2008). Thus, the action is based on

the equitable principle "that a person shall not be allowed to enrich himself unjustly at the expense of another." It is an obligation created by law in the absence of any agreement; therefore, it is an implied in law contract. <u>Koval v. Koval</u>, 576 So. 2d 134, 137 (Miss. 1991). Cole has put forth a sufficient issue of material fact such that summary judgment is not warranted based on the facts and disputes as set forth above.

**Motion for Partial Summary Judgment [79]**

Cole moves for partial summary judgment on Kenlan's Counterclaim. Kenlan asserts that by virtue of the Purchase Agreement, the prevailing party in this suit is entitled to attorneys' fees. Cole argues that because they are not asserting a breach of contract claim, nor seeking any relief under the contract, using this provision to award attorneys' fees is improper as a matter of law. Specifically, Cole argues that, except for mutual mistake, unilateral mistake, and unjust enrichment, which are equity-based claims, all others are based on tort law, not contract law. Therefore, the contract provision for attorneys' fees would not apply.

Paragraph 21 of the Purchase Agreement provides:

21. <u>ATTORNEYS FEES</u>. If there is any litigation to enforce any provisions or rights arising herein, the unsuccessful party in such litigation, as determined by the court, agrees to pay the successful party, as determined by the court, all costs and expenses, including, but not limited to, reasonable attorneys' fees incurred by the successful party, such fees to be determined by the court.

Accordingly, this Court must determine whether Cole's suit is one to enforce any provisions or rights arising under the Purchase Agreement.

Kenlan asserts that because the parties had no other relationship other than that arising out of the contract, the suit is therefore based on the Purchase Agreement. Further, Kenlan notes that a breach of the covenant of good faith and fair dealing is inherently contractual as it seeks to enforce

11

implied contractual provisions. Moreover, Kenlan points out several admissions in the record whereby Cole and its' representatives assert that their claims are based on Section 8 of the Purchase Agreement which requires Kenlan to provide to Cole certain information.

Cole relies in part on the section preceding Section 21, entitled "Remedies." That section, Cole maintains, does not mention remedies available for tort or equitable claims. Therefore, when read together with the attorneys' fees provision, Cole contends, the contract does not contemplate claims like those lodged by Cole in this action. Cole cites several cases in which they assert Mississippi courts have interpreted the attorneys' fee clause to only apply to successful breach of contract claims. One such case, Industrial & Mechanical Contractors of Memphis, Inc. v. Tim Mote Plumbing, LLC, was a contractual dispute involving defective work of a subcontractor. 962 So. 2d 632, 634 (Miss. Ct. App. 2007). The prevailing party filed a motion for attorneys' fees pursuant to a clause in the subcontract obligating the non-prevailing party to pay attorneys' fees "[i]f it becomes necessary for [a party] to employ an attorney to enforce its rights against [the other party]." The Court held that enforcing a contract without enforcing the clause addressing attorneys' fees would be contrary to law. Thus, Cole asserts here, they are not seeking to enforce the contract, so the attorneys' fees clause must likewise go unenforced.

Attorneys' fees can only be awarded pursuant to a relevant contractual provision, statutory authority, or where punitive damages are also proper. Hearn v. Autumn Woods Office Park Prop. Owners Ass'n, 757 So. 2d 155, 164 (Miss. 1999). "Where a contractual provision concerning the award of attorneys' fees is at issue, this Court will apply its rule concerning the interpretation of any contract, which is to 'enforce a contract when its terms are clear and unambiguous.'" Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n, 964 So. 2d 1100, 1114 (Miss. 2007) (citing Hamilton

v. Hopkins, 834 So. 2d 695, 700 (Miss. 2003)).

The terms of this contract are unambiguous - the attorneys' fee clause only applies where there is litigation to enforce provisions or rights arising under the Purchase Agreement.

Cole's allegations against Kenlan for fraudulent inducement and concealment are based on the contention that Kenlan knew about and failed to apprise Cole of the information about Duffy's failures in the theater business, diminished monetary reserves, and unsecured judgments incurred by him. Moreover, Cole asserts Kenlan concealed Malco's market assessment of the Oxford area. Cole claims these misrepresentations induced them into purchasing the theater and if they had known that information, would not have entered into the contract.

Under Mississippi law, in order to prove or assert fraudulent inducement, a plaintiff does not have to rely upon a contractual provision. See Franklin v. Lovitt Equip. Co., 420 So. 2d 1370, 1373 (Miss. 1982). Therefore, as to Cole's first claim, fraudulent inducement and concealment, this cause of action does not seek to enforce provisions of the contract, nor any rights arising thereunder.

Likewise, with the remainder of the claims asserted by the plaintiff, if there were no contract between the parties, Cole could still assert four out of the five remaining claims. See Perrien, 374 So. 2d at 796 (elements necessary to prove mutual mistake); Ruff, 989 So. 2d at 370 (elements necessary to prove unilateral mistake); Skrmetta, 806 So. 2d at 1124 (elements necessary to prove negligent misrepresentation); and 1704 Twenty First Ave., Ltd., 988 So. 2d at 416 (explaining unjust enrichment). Those four are not claims to enforce rights and obligations under the contract. However, the fifth, breach of duty of good faith and fair dealing, could only arise if there was a contract because this claim is implied in every contract. Cenac, 609 So. 2d at 1272. Thus, the right arises out of the contract and attorneys' fees may be awarded to the prevailing party on that one

13

claim. Thus, Plaintiff's Motion for Partial Summary Judgment is granted in part as attorneys' fees are not available for four of Cole's claims, and denied in part as attorneys' fees are available for their breach of the covenant of good faith and fair dealing claim.

**Motions to Strike**

   1. *Oxford Eagle Newspaper Article* [88]

Defendants filed a Motion to Strike an Oxford Eagle newspaper article which cites comments by Kenny Farrell, a Kenlan partner at the time, as "rank hearsay." The article, published in February of 2003, attests that the Kenlan partners planned to open their theater regardless of Malco Theatre's plans to renovate and build an eight-screen movie theater in the Oxford mall. In response, the article notes that Farrell said the situation is "not ideal." He further stated, "It will be difficult for both to thrive. But can they both survive? Maybe."

Federal Rule of Civil Procedure 801(d)(2) declares that a statement is not hearsay if it is the party's own statement, in either an individual or a representative capacity. There has been no evidence produced or cited that Kenny Farrell, as of the date of the publication of this article, was not a part of Kenlan such that any statement made would not be regarded as an admission by a party-opponent. Thus, the newspaper article is not hearsay and is admissible for purposes of analyzing the Motion for Summary Judgment.

   2. *Affidavits of Christopher Robertson and John Pons* [90] *and Affidavits of Lance Forsdick, Jr., and Michael Pascal* [103]

Defendants move to strike the affidavits of Christopher Robertson and John Pons arguing that those affidavits contain arguments, statements, assumptions, and subjective conclusions that are inconsistent with Federal Rule of Civil Procedure 56. Moreover, Cole moves to strike the portions

of Lance Forsdick, Jr., and Micheal Pascal's affidavits that contain argumentative statements, hearsay, subjective conclusions, and assumptions that are in violation of the requirements of Federal Rule of Civil Procedure 56(e)(1).

Rule 56(e)(1) mandates that affidavits attached to summary judgment motions be made on the affiant's personal knowledge, setting out facts that would be admissible in evidence, and showing that the affiant is competent to testify to the matters stated.

The Court has examined all exhibits attached to the motions and responses, including the affidavits at issue. Those portions of the affidavits that are based on speculation, argument, hearsay, and without personal knowledge have been disregarded by the Court in ruling on the Motion for Summary Judgment. Accordingly, Defendants' Motion to Strike the Affidavits of Christopher Robertson and John Pons [90] is denied, and Cole's Motion to Strike Affidavits of Lance Forsdick, Jr., and Michael Pascal [103] is denied.

*Conclusion*

Cole has presented a genuine issue of material fact as to all claims brought in their Second Amended Complaint. Thus, Kenlan's Motion for Summary Judgment on these causes of action is DENIED. Cole's Motion for Partial Summary Judgment as to a potential award of attorneys' fees is GRANTED in part and DENIED in part. Cole's claim of breach of covenant of good faith and fair dealing arises out of the contract; thus the prevailing party in the litigation to enforce that right may be entitled to attorneys' fees under the Purchase Agreement.

This Court has the discretion under Federal Rule of Civil Procedure 15(b) to amend the pleadings to conform with the evidence presented. Because this Court finds that no prejudice will befall the defendants by allowing allegations of Kenlan's failure to produce landlord references,

Cole's Motion to Amend the Pleadings is GRANTED.

The Court also denies the Motion to Strike the <u>Oxford Eagle</u> newspaper article and the motions to strike the affidavits of Christopher Robertson, John Pons, Lance Forsdick, Jr., and Michael Pascal.

SO ORDERED, this the __12th__ day of January, 2009.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**